[Civ. No. 3519. Fourth Dist. Dec. 9, 1946.]

HARRY E. MOORE et al., Appellants, v. CHARLES W. WIMMER, Respondent.

[Civ. No. 3520. Fourth Dist. Dec. 9, 1946.]

CHARLES W. WIMMER, Respondent, v. HARRY E. MOORE et al., Appellants.

Calvin H. Conron, Jr., and Allan B. Campbell for Appellants.

Frederick E. Hoar for Respondent.

BARNARD, P. J.—On December 11, 1944, the appellants advanced $15,000 to the respondent to enable him to purchase a cafe and cocktail lounge at Randsburg. He purchased this business for $12,050, and on the next day the parties executed a trust agreement in which it was provided: That this respondent should devote his entire time to this business and put forth his best efforts to the end that it should be conducted efficiently and in compliance with all laws; that he should deposit all receipts in a separate bank account which should be subject to the inspection of the appellants; that he should keep a double entry set of books showing all transactions, and submit quarterly statements to the appellants; that he should be paid $75 a week for his services, to be accounted for as an expense of the business; that the entire profits should be paid to the appellants until their advances, with cost and ex-

penses, were repaid with interest; and that, thereafter, the profits should be divided, one-half to the appellants and. one-half to the respondent.

It was further provided that if the business should be sold the proceeds should be applied in a similar manner; that in the event the advances were not repaid within four years the business should be liquidated; that after repayment of the advances the respondent should own a one-half interest in said business; and that if he should violate the terms of the agreement for a period of ten days after receipt of a written notice ''specifying such violation and demanding its correction,'' the appellants might maintain an action to terminate the trust and to declare a forfeiture of his interest in the business.

Shortly thereafter the respondent applied for a liquor license in connection with this business, and one was issued to him individually. About the same time, with the consent of the appellants, the respondent used $1,250 of the $15,000 advanced to pay off certain judgments against himself personally, and also used about the same amount to purchase a light truck which it was agreed was needed in connection with the operation of this business.

On January 10, 1945, the appellants advanced an additional $3,000 to the respondent and he gave them a note for $18,000, payable in monthly installments of $250 or more. On January 12, 1945, the respondent, at the request of the appellants and for the expressed purpose of giving them better security, executed and delivered to them a chattel mortgage covering the lease, the furniture and fixtures, the stock in trade, and all licenses. This mortgage recited that it was given to secure the repayment to the appellants of $15,000 to be paid in monthly installments of $250 or more each month, commencing February 1, 1945, until the entire sum, with interest at 5 per cent per annum on the deferred balance, should be paid. The respondent therein agreed not to sell this business or any of the mortgaged articles, except in the ordinary course of business, to pay all bills when due, and to conduct the business in accordance with all laws applicable thereto. It was then provided that the appellants might foreclose in the event the respondent failed to make any of the monthly payments, if he breached any provision of the mortgage, or ''if for any reason mortgagee feels insecure.'' The final provision of this mortgage reads as follows:

"Upon the repayment of this mortgage, Mortgagor agrees to hold said property thereafter pursuant to the provisions of a Trust Agreement between the parties hereto."

The place was opened for business on the day the mortgage was given. The monthly payments therein called for were made on February 1, March 1, and also on April 1, 1945, the latter payment being made after suit was filed but before a receiver was appointed.

On or about March 21, 1945, the appellants told the respondent that they were through with him because he had "been drunk all the time and neglected the business." They then, in respondent's absence, took money and records from the place of business, changed the combination of the safe, and arranged to have the head barkeeper cooperate with them. On March 27, 1945, the appellants brought the first of these actions. The complaint alleged that the respondent had violated the terms of the trust agreement by failing to devote his entire time to the business, by consuming alcoholic liquor to excess, by employing incompetent employees and discharging competent employees, by violating the law in permitting liquor to be sold to minors, by failing to keep proper books and failing to deposit receipts in a separate bank account, by withdrawing more than $75 per week, and by failing to apply the profits of the business to the repayment of the advances made. It was further alleged that the respondent had fraudulently induced the appellants to refrain from giving a 10-day notice, as called for in the trust agreement, by orally admitting that he had violated that agreement and promising that he would, within five days, either repay the $18,000 or surrender possession of the premises. In a second cause of action it was alleged that the respondent had violated the terms of the chattel mortgage by failing to keep up the stock in trade, by removing assets of the business, by failing to pay taxes, and by failing to conduct the business in accordance with law; and that these appellants "feel insecure" by reason of these defaults. The prayer was that a receiver be appointed, that the interest of the respondent in this business be declared forfeited, and that these appellants be awarded the possession thereof. A receiver was appointed on April 21, 1945.

When service of summons was made on March 27, 1945, the appellants also took possession of the truck above referred to. Shortly thereafter, the respondent filed an action in claim and delivery seeking to recover the possession of this truck,

or its value in case delivery could not be had. The two actions were consolidated for trial, and are presented together on this appeal.

The court found in all respects in favor of the respondent. In brief, it was found that the respondent had not violated any of the provisions of the trust agreement. A finding in his favor was specifically made with respect to each violation of that agreement charged in the complaint. It was further found that no 10-day notice had been given to the respondent, as required by the trust agreement, and that no promise or other act on the part of the respondent had misled the appellants or induced them to refrain from giving such a notice. With respect to the chattel mortgage, it was found that the respondent had not violated any of its provisions and specific findings in his favor were made as to all such charges contained in the complaint. With respect to the other action, for the possession of the truck, it was found that on March 27, 1945, these appellants took possession of the truck believing that they had a right to do so, that they acted in good faith but were in error in so doing, and that their action in taking the truck was unlawful and without any right. Separate judgments were entered denying these appellants any relief in the first action, and awarding the respondent possession of the truck in question, or its value in case delivery could not be had. The plaintiffs in the first action, being the defendants in the second action, have appealed from both judgments and from a subsequent order discharging the receiver. The receiver, however, has remained in possession of the property under a stay bond.

It is first contended that the court committed prejudicial error in failing to construe the trust agreement and the chattel mortgage as one agreement, and in holding that the chattel mortgage was given and accepted for the purpose of "superseding" the prior trust agreement. Until the advances were repaid, a very considerable change was made by the chattel mortgage both expressly and by necessary implication. The changes thus made and the final provision of the mortgage, that upon its repayment the respondent would thereafter hold the property under the provisions of the trust agreement, indicate an intention to supersede some of the provisions of the prior agreement, and to suspend the operation of at least some of the others. Whether the prior agreement be regarded as superseded or as suspended, in whole or in part, is immaterial

in this action. No prejudice could have resulted. Most of the violations claimed, if established, would also constitute violations of the provisions of the chattel mortgage. And even if the trust agreement was not superseded the others could not be relied upon as the 10-day notice required by the trust agreement was not given and it was found, upon sufficient evidence, that no waiver or estoppel existed in that connection. The contention that prejudice appears because this holding has the effect of destroying the appellants' interest in this business, after the mortgage debt is paid, is without merit. The mortgage itself provides that when the debt is paid the property is then to be held pursuant to the provisions of the trust agreement. The controlling question here is as to whether or not the provisions of this chattel mortgage were so violated as to require a foreclosure of the respondent's interest in this business.

It is next urged that the court's findings that the respondent had not violated the provisions of this mortgage, and that he had not been guilty of the particular acts with which he was charged, are not supported by the evidence. It is argued that the undisputed evidence discloses four such violations on the part of the respondent: (1) That he violated the law in that he at no time maintained a restaurant as required by the Alcoholic Beverage Act; (2) that he violated the law in willfully refusing to file sales tax and Social Security reports; (3) that he violated the labor law in failing to pay his help periodically; (4) and that he failed to pay interest on the balance of the mortgage obligation, paying only the monthly payments of $250. The first of these charges seems to have been an after-thought as no serious effort was made to establish such a fact at the trial. While it was incidentally brought out that the installation of a certain lunch counter was not completed before suit was filed, we can find no evidence that there was no sufficient serving of food to comply with the law. On the other hand, there is considerable evidence that food was served during the time in question. The second charge relates to a delay in filing these reports in the month of April, after this suit was brought. It does not appear whether it occurred after a receiver was appointed or while the application for a receiver was pending. It does appear that the delay was caused by the fact that the attorney for the respondent was in doubt as to who should make the reports, and the reports were actually filed by the receiver.

As to the third charge, it appears that one of the barkeepers did not want his pay regularly and, at his request, the respondent deposited checks to the barkeeper's account in a bank at Bakersfield on the occasions when the respondent went to that city. The fourth charge of violation is without merit. Under the terms of the mortgage no payment of interest was required before this action was brought.

In this connection, but under another heading, it is argued that these findings are contrary to the undisputed evidence, it being stated that the respondent in his own testimony admitted (a) that he was intoxicated on several occasions; (b) that he never operated a cafe; (c) that he failed to keep books; and (d) that he failed to pay wages when due. While the respondent admitted that he might have used liquor to excess ''a couple of times,'' he did not admit that this occurred in such a manner as might have interfered with his conduct of the business, and there is a great deal of evidence to the contrary. With respect to the other three claimed admissions, the references made to the transcript show that the statements relied on were made by other witnesses, and we can find no such admissions in the respondent's testimony.

It may be further observed, with respect to the matter of bookkeeping, that it appears from the evidence that at the beginning of operations the respondent, at the request of the appellants, employed a bookkeeper in Bakersfield who was selected by them, that he kept daily records which were placed in envelopes as directed by the bookkeeper, that he took or sent these records to the bookkeeper, and that any deficiency in the books was due to the acts of the bookkeeper and to the acts of the appellants after they began to interfere in the conduct of the business.

While portions of the evidence would have supported findings that the terms of the mortgage were violated in certain respects, there is evidence to the contrary which supports the findings made and nothing more than a conflict appears in this connection.

It is next contended that the court erred in excluding evidence of matters which occurred subsequent to the filing of this action. Most of the evidence thus excluded related to claimed intoxication on the part of the respondent, and most of this related to a time after a receiver was appointed. Some of it related to the first three weeks of April, when the respondent was still nominally in charge, although the appellants

were then largely controlling the conduct of the business through the head barkeeper. Offers of proof made in this connection were insufficient in that they did not cover all of the elements necessary to show a neglect of the business or an adverse effect upon the business. In another instance, the proof offered would have shown that a few days before the receiver was appointed the respondent closed the business for one day. Other elements enter into that occurrence, including interference in the business by the appellants and their agents. Another offer of proof was made in connection with the conviction of a temporary barkeeper for selling liquor to a minor. The offer of proof was insufficient, and the matter was gone into at another time showing that the respondent had had nothing to do with the incident.

If it could be considered, under any theory, that evidence of any such subsequent acts were admissible it cannot be held, under the circumstances here appearing, that the rejection of this evidence was prejudicial. Most of this matter was cumulative and there was considerable evidence on both sides along this line. The main part of the rejected evidence had already been presented to the same judge, in affidavits in connection with the appointment of a receiver, and he was familiar with it. In view of all of the evidence in the record it cannot be assumed that any of this evidence, if formally admitted, would have changed the trial judge's mind or have affected the result. In any event, the subsequent acts of the respondent should be considered in the light of what the appellants had done. The evidence, as a whole, justifies the inference that in attempting to terminate this relationship so soon the appellants were actuated by a motive other than any of those now relied on.

It is next contended that even on the findings made the appellants were entitled to judgment since the mortgage provided that it might be foreclosed "if for any reason mortgagee feels insecure." The right thus given is not an arbitrary one but is one the exercise of which must be based upon reasonable grounds. (*Rochon* v. *Pacific Coast Mtg. Co.*, 111 Cal.App. 298 [295 P. 364].) As found by the court, no change had here taken place between the execution of the mortgage and the filing of suit, upon which a feeling of insecurity could reasonably be based. It appears that the business was prospering at the time the appellants took action and that the receipts of the business had very greatly increased during

the last month in which the respondent was in undisputed possession. All required payments had been made, and there was nothing to indicate that the existing situation would not continue. No objection had been raised, and no request or complaint had been made until appellants were ready to act. No error appears in this respect.

The next point raised is that the findings are conflicting and, therefore, do not support the judgment. It is argued that findings that any breaches or violations of the chattel mortgage ''if such did occur, were of minor, inconsequential and unsubstantial nature and wholly insufficient to justify forfeiture of defendants' rights herein''; that the personal habits and characteristics of the respondent were and had been personally known to the appellants for many years; and that no change therein occurred to their detriment between the execution of this mortgage and the commencement of this action that would warrant a declaration of forfeiture or ''reasonably warrant plaintiffs to feel insecure,'' are in conflict with other findings to the effect that no violations occurred. Some of the evidence supports the findings that there were no violations and some of the evidence would support findings that there were minor violations which were not sufficient, in equity, to justify a forfeiture or foreclosure. A finding that there were violations which were inconsequential and unsubstantial would, in practical effect, be a finding that in a legal sense there was no violation. There was no positive finding to that effect here, the finding being that if any breaches or violations did occur they were inconsequential and unsubstantial in nature. Under any view, both findings are supported by the evidence and either is sufficient to support the judgment in such an equitable action. No fatal conflict in this regard appears.

The last point raised, with respect to the first action, is that the receiver should not have been discharged until the judgment became final. This is sufficiently answered by what we have already said, by the fact that no abuse of discretion appears (*Wiencke* v. *Bibby,* 15 Cal.App. 50 [113 P. 876]; *Sly* v. *Superior Court,* 71 Cal.App. 290 [235 P. 83]), and by the fact that no prejudice appears because the receiver has been continued under a stay bond.

With respect to the second action, for the possession of the truck purchased for use in connection with this business, the appellants contend that two findings are not sup-

ported by the evidence. In the first of these, it was found that the respondent "was the owner of and entitled to the immediate possession of" this truck. In the second, it was found that it is not true that this truck was purchased by the respondent as a part of this business, or that the respondent agreed to hold the same in trust pursuant to the terms of the trust agreement, or pursuant to the provisions of the chattel mortgage. The undisputed evidence shows that this truck was purchased with funds advanced by the appellants and for the purpose of being used in this business. There was, therefore, a resulting trust in favor of the appellants. (*Goes v. Perry,* 18 Cal.2d 373 [115 P.2d 441].) The finding that the respondent was the owner of the truck is not supported by the evidence. The other finding referred to is also without such support. However, neither of these unsupported findings of fact is essential to the judgment, which was merely that the respondent recover the possession of the truck. The truck has already been turned over to the receiver and should be considered as one of the assets of the business. The ultimate ownership of the truck will depend upon subsequent events and should not be, and cannot be, determined in this action. The portions of the findings which are thus unsupported should be stricken with that end and purpose in mind. This will require no modification of the judgment, which correctly awarded possession of the truck to the respondent.

The words "the owner of and" appearing in Finding II and all of Finding VI are ordered stricken. The two judgments and the order appealed from are affirmed.

Marks, J., and Griffin, J., concurred.