BRUCE N. PARKS, Appellant, *v.* DEAN PHILLIPS
AND WILMA PHILLIPS, Respondents.

Nos. 3851–3852

November 16, 1955.                289 P.2d 1053.

*Diehl & Recanzone,* of Fallon, for Appellant in No.
3851 and Respondent in No. 3852.

*Wayne O. Jeppson,* of Yerington, for Respondents in
No. 3851 and Appellants in No. 3852.

## OPINION

By the Court, BADT, J.:

The cross appeals were consolidated for argument. Upon vendor's repossession of an automobile, under asserted covenants of purchase agreement, vendees sued for the return of the car or its value, damages for the detention and exemplary damages. The vendor appealed from the judgment entered on the jury's verdict in favor of the vendees on all items and from the court's denial of new trial on the judgment for the value of the car

and the judgment for compensatory damages. The vendees appealed from the court's order granting a new trial on the item of exemplary damages.

On April 21, 1953 appellant as vendor and Dean and Wilma Phillips as vendees entered into a written conditional sale agreement of a 1951 Studebaker for $2,167.-44, comprising the items of $1,800 cash price, $175 insurance premiums and emergency benefits and $192.44 finance charges. Against this aggregate price the vendees were allowed a down payment credit of $600, and the evidence discloses that this credit was made up by the turn-in of a 1941 Oldsmobile $345, cash $155, and a note for $100. The balance to the vendor, $1,567.44, was payable in monthly installments of $74.64, commencing June 1, 1953. Delivery of all items was made forthwith. The vendor attempted to finance the contract with Commercial Credit Company which, however, refused to accept the paper because the vendees within the past 30 days had surrendered another car because they were unable to make monthly payments of $47.40 thereon. In the meantime the vendees had made a trip to Idaho in their newly purchased car to visit a sick relative and had returned at the end of three days and just about at the time of the unfavorable return from Commercial Credit Company. Thereupon, on April 30, nine days after the execution of the contract and over a month before the first monthly payment was due, the vendor repossessed the Studebaker in question, basing his right to repossess the car upon (1) the vendees' breach of the covenant that the car would be kept at Mina, and (2) upon the covenant giving him the right to repossess "if the holder should deem itself or said car insecure." Of the cash payment of $155, the sum of $44 was to be used to make the final payment on the 1941 Olds turned in. A few days after the repossession the vendor wrote the vendees: "We have the papers back on Olds now and any time you can come in we can straighten up. The tires are still on [the Studebaker] car and will have to stay there but we will make a financial settlement on them." The reference

to the tires was to the fact that the vendees had purchased two new tires to make the trip to Idaho, at a cost of $56.90. This suggestion of the vendor was ignored by the vendees, who went to their attorney and commenced the present action within two weeks thereafter.

The jury returned a general verdict in favor of the vendees as plaintiffs for the value of the Studebaker car in the sum of $556, damages for loss of use of the car from April 30, 1953 to date of trial (some 440 days) $500, and punitive damages in the further sum of $500. In answer to special interrogatories the jury found (1) that the vendees had removed the car from the state without permission; (2) that this did not constitute a breach of the contract; (3) that the vendees had not made a false statement as to their credit; and (4) that the defendant vendor was not acting in good faith and in a reasonably prudent manner in repossessing the car from the plaintiff vendees.

In ruling on a motion for summary judgment the learned district judge said: "The said defendant, in his said separate and affirmative defense, also alleges fraud and deceit on the part of the plaintiffs. In his prayer, he asks for damages in the sum of $500.00 for such alleged deceit. In the presence of fraud and deceit on the part of plaintiffs, the defendant would have the right of election either to sue to rescind, or to stand on the contract and seek compensation for such damages as he may have suffered by reason of the fraud, in addition to seeking his other remedies under the contract. The defendant has chosen the latter course." Such election is clear, not only from the defendant's pleadings but also from his position asserted during the trial and in his briefs filed with this court. It would be idle to speculate as to what conclusion might have been reached in the district court and in this court had the action been one for rescission, coupled with the undisputed offer of the vendor to call the whole transaction off and to make the vendees whole.

The crux of the jury's verdict would appear to be in their special finding that the defendant was not acting in good faith and in a reasonably prudent manner in repossessing the car from the plaintiffs. This in turn amounted substantially to a finding that in repossessing the car the defendant had nothing to justify his conclusion that he deemed himself or the car to be insecure and that in repossessing the car he had acted arbitrarily and capriciously. The jury definitely found in answer to question 2 that the three-day trip to Idaho without the consent of the contracting seller was not a breach of the terms of the contract. Undoubtedly it could be said that in so finding the jury was using its judgment based on its common experience and knowledge. The trip to Idaho was thus negatively disposed as a justification for Parks' deeming himself insecure. That still left in the case the discovery of the fact that the credit of the Phillipses with Commercial Credit Company was not good. Here again, however, we are confronted by the fact, developed through the pleadings, the briefs, the position taken in open court by defendant's counsel and as recognized in the rulings of the trial court, Parks did not elect to rescind the contract but to stand on it despite the credit rating of the plaintiffs. By choosing to stand on the contract after knowledge of the true state of vendees' credit rating, the vendor must be held to have accepted this fact and cannot now assert it to justify a feeling of insecurity. The vendor repossessed over 30 days before any default in payments by the vendees. The purported breach growing out of the trip to Idaho having been disposed of, the vendor's conclusion that he deemed himself insecure grows entirely out of the refusal of Commercial Credit Company to finance the paper. But this was no part of the contract, and the testimony was conflicting as to the understanding of the parties as to the necessity to turn the paper or as to representations of their credit by the vendees. Nor had there been any change of conditions in the meantime.

The vendor contends that the testimony of both the vendees is wholly discredited; that they often contradicted themselves and each other and changed their testimony in material respects, and that in other respects it was definitely impeached and refuted; that the damages awarded them by the jury in view of the entire picture of the residence of the vendees, their financial situation, their former car purchasing experiences, their general improvidence, etc. was fantastic. We have listened to these contentions with interest and sympathy and may say frankly that a reading of the cold record might well have induced us (were we the triers of the facts) to come to a far different conclusion as to the damage suffered by the Phillipses by reason of Parks' repossession of the Studebaker. However, not only did the jury see, hear and observe the witnesses, but the district judge likewise denied new trial of the two issues indicated. That he was alert to the entire situation is evident from the fact that he granted a new trial on the issue of punitive damages. We cannot agree with the contention of the appellant that there is not a scintilla of evidence to support either the jury's verdict or the district judge's denial of new trial. Parks repossessed the car over 30 days before a default in payment because he felt himself insecure. That such deeming of himself to be insecure must, as a justification for the repossession, have been based upon good cause is conceded by appellant. Rochon v. Pac. Coast Mortg. Co., 111 Cal.App. 298, 295 P. 364, recently cited with approval in Moore v. Wimmer, 77 Cal.App.2d 199, 174 P.2d 640. Implicit in the jury's special finding that appellant was not acting in good faith and in a reasonably prudent manner in repossessing the car is the finding that there was not good and proper cause for his deeming himself insecure. Substantial evidence to support this finding is found (1) in the repossession more than 30 days before any default in payments, (2) in the

fact that no provision in the contract called for the vendees' assistance in the vendor's refinancing of the contract, and (3) in the entire absence of showing of any breach or any change in conditions—the adding of the two new tires having enhanced rather than diminished the vendor's security. Supported by the trial judge's denial of a new trial, we are not at liberty to disturb the finding. The same conclusion applies to the compensatory damages resulting from the loss of the use of the car by the vendees.

On the cross appeal of the vendees from the trial court's order granting a new trial of the issue of exemplary damages, the lack of malice, oppression or fraud is so clear from the record that we have no hesitancy in affirming the order and judgment in this respect.

The judgment in favor of respondents and against appellant in appeal No. 3851 in the sum of $556 for loss of respondents' interest in the car and for $500 damages for loss of the use of the car for a period of 440 days and the order denying a new trial of these two issues is affirmed. The order granting the motion of the vendor, as respondent in No. 3852, for a new trial of the issue of punitive damages in the sum of $500 is likewise affirmed.

Appellant presents several other assignments of error as grounds for reversal, but we do not consider these of sufficient importance to warrant discussion.

Judgments and orders appealed from all affirmed, with costs to respondents in No. 3851 and costs to respondent in No. 3852. As the record on appeal was used for both appeals, one half the cost of the record may be included in respondents' costs in No. 3851 and one half in respondent's costs in No. 3852.

MERRILL, C. J., and EATHER, J., concur.